1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

JAMES ODRA SMITH,

           Petitioner,

     v.

D. ADAMS, Warden,

           Respondent.

         )
         )
         )
         )
         )
         )
         )
         )
         )
         )

CV F 02 6124 OWW LJO HC

ORDER DISMISSING PETITION FOR WRIT
OF HABEAS CORPUS

ORDER DIRECTING CLERK OF COURT
TO ENTER JUDGMENT

        Petitioner is a state prisoner proceeding pro se with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 on remand from the Ninth Circuit Court of Appeals.  The parties having voluntarily consented to exercise of Magistrate Judge jurisdiction pursuant to 28 U.S.C. § 636(c)(1), by order dated April 6, 2005, this case was assigned to the undersigned for all purposes, including entry of final judgment.

## PROCEDURAL HISTORY- STATE

        Petitioner is currently in the custody of the California Department of Corrections pursuant to a judgment of the Superior Court of California, County of Tulare, following his conviction by jury trial on May 14, 1996, of one count of residential burglary in violation of Cal. Penal Code § 459, one count of receiving stolen property in violation of Cal. Penal Code § 496(1), and two counts of being

1    a felon in possession of a firearm in violation of Cal. Penal Code § 12021(a). <u>See</u> Exhibit A,

2    Respondent's Motion to Dismiss dated March 7, 2003 (hereinafter "Motion"). It was also found true

3    that Petitioner suffered two prior serious felony convictions and served one prior prison term. <u>Id.</u> On

4    June 12, 1996, Petitioner was sentenced to serve an indeterminate term of 25 years to life in state

5    prison for the residential burglary conviction. <u>Id.</u> Petitioner was sentenced to an additional

6    determinate term of 10 years for the prior felony conviction enhancements. <u>Id</u>. The other convictions

7    and enhancements were either stayed or struck. <u>Id.</u>

8           Petitioner appealed the conviction. On October 1, 1997, the California Court of Appeals,

9    Fifth Appellate District (hereinafter "5th DCA"), affirmed the conviction. <u>See</u> Exhibit B, Motion.

10   Petitioner did not file a petition for review in the California Supreme Court.

11          Petitioner filed ten petitions for collateral relief in the state courts. On February 22, 1996,

12   Petitioner filed a petition for writ of habeas corpus in the Tulare County Superior Court. <u>See</u> Exhibit

13   C, Motion. The petition was denied on February 27, 1996. <u>See</u> Exhibit D, Motion. On April 1,

14   1996, Petitioner filed a petition for writ of habeas corpus in the 5th DCA. <u>See</u> Exhibit E, Motion.

15   The petition was denied on April 26, 1996. <u>See</u> Exhibit F, Motion. On September 11, 1996,

16   Petitioner filed a petition for writ of habeas corpus in the Tulare County Superior Court. <u>See</u> Exhibit

17   G, Motion. The petition was denied on September 16, 1996. <u>See</u> Exhibit H, Motion. On March 23,

18   1998, Petitioner filed a petition for writ of habeas corpus in the Tulare County Superior Court. <u>See</u>

19   Exhibit I, Motion. The petition was denied on August 18, 1998. <u>See</u> Exhibit J, Motion. On April

20   15, 1998, Petitioner filed a petition for writ of habeas corpus in the 5th DCA. <u>See</u> Exhibit K, Motion.

21   The petition was denied on April 21, 1998. <u>See</u> Exhibit L, Motion. On March 2, 2001, Petitioner

22   filed a petition for writ of habeas corpus in the Tulare County Superior Court. <u>See</u> Exhibit M,

23   Motion. The petition was denied on October 30, 2001. <u>See</u> Exhibit N, Motion. On August 28,

24   2001, Petitioner filed a petition for writ of habeas corpus in the 5th DCA. <u>See</u> Exhibit O, Motion.

25   The petition was construed as a petition for writ of mandate and denied on August 30, 2001. <u>See</u>

26   Exhibit P, Motion. On December 6, 2001, Petitioner filed a petition for writ of habeas corpus in the

27   5th DCA. <u>See</u> Exhibit Q, Motion. The petition was denied on December 13, 2001. <u>See</u> Exhibit R,

28   Motion. On January 8, 2002, Petitioner filed a petition for writ of habeas corpus in the 5th DCA. <u>See</u>

1   Exhibit S, Motion.  The petition was denied on May 20, 2001.  <u>See</u> Exhibit T, Motion.  On January

2   17, 2002, Petitioner filed a petition for writ of habeas corpus in the California Supreme Court. <u>See</u>

3   Exhibit U, Motion.  The petition was denied on July 24, 2002.  <u>See</u> Exhibit V, Motion.

4                              **PROCEDURAL HISTORY - FEDERAL**

5          On September 3, 2002, Petitioner filed a petition for writ of habeas corpus in the Sacramento

6   Division of the Eastern District of California.  The action was transferred to this Court on September

7   16, 2002.

8          On March 7, 2003, Respondent filed a motion to dismiss the petition for violating the statute

9   of limitations.  On April 29, 2003, Magistrate Judge Hollis G. Best issued a Findings and

10  Recommendation recommending dismissal of the action. On May 20, 2003, the District Court

11  adopted the Findings and Recommendation and dismissed the action.

12         Petitioner appealed to the Ninth Circuit Court of Appeals.  On August 16, 2004, the Ninth

13  Circuit reversed the judgment and remanded the case to this Court for further factual development on

14  the issue of whether Petitioner is entitled to equitable tolling in light of <u>Laws v. Lamarque</u>, 351 F.3d

15  919 (9th Cir.2003) and <u>Lott v. Mueller</u>, 304 F.3d 918 (9th Cir.2002).

16         On September 10, 2004, this Court issued an order directing Respondent to brief the issue of

17  equitable tolling outlined by the Ninth Circuit.  Respondent's brief was due forty-five (45) days later,

18  on November 1, 2004.

19         On October 25, 2004, Respondent filed his first request for an extension of time of sixty (60)

20  days. Petitioner filed an opposition to said motion on November 5, 2004.  The Court granted an

21  additional forty-five (45) days, extending the deadline to December 16, 2004.

22         On December 17, 2004, Respondent filed his second request for an extension of time.  On

23  January 4, 2005, Petitioner renewed his objections to any additional time.  On January 12, 2005, the

24  Court granted an additional thirty (30) days time extending the deadline to February 12, 2005.

25         On February 10, 2005, Respondent filed a third request for an extension of time.  On

26  February 22, 2005, Petitioner renewed his objections.

27         On February 25, 2005, a telephonic hearing was held on Respondent's motion.  Petitioner

28  appeared on his own behalf, and Justain P. Riley, Esq., of the California Attorney General's Office

1   appeared on behalf of Respondent.  Following arguments by both parties, the Court determined that a

2   final extension of time was necessary; the deadline for Respondent's brief was set for May 2, 2005.

3   Petitioner's reply brief was due thirty (30) days thereafter, and Respondent's surreply brief, if any,

4   was due fifteen (15) days thereafter.

5        On April 20, 2005, Respondent filed his brief. Petitioner filed a brief in reply on May 16,

6   2005. Respondent filed a surreply on May 26, 2005.

7                                    **DISCUSSION**

8   I. Statute of Limitations

9        The AEDPA imposes a one-year period of limitation on petitioners seeking to file a federal

10  petition for writ of habeas corpus.  28 U.S.C. § 2244(d)(1).  The statute of limitations may be tolled

11  pursuant to statute, see § 2244(d)(2), or equitably, see Spitsyn v. Moore, 345 F.3d 796, 799 (9th

12  Cir.2003).  The Ninth Circuit remanded this action to determine whether Petitioner is entitled to

13  equitable tolling of the one-year limitations period.  As Respondent correctly notes, an intervening

14  Ninth Circuit case, Gaston v. Palmer, 387 F.3d 1004 (9th Cir.2004), altered the manner in which

15  statutory tolling could be applied; therefore, the issue will also be addressed.

16        A. Equitable Tolling

17        The statute of limitations set forth in 28 U.S.C. § 2244(d)(1) may be equitably tolled when

18  "extraordinary circumstances beyond a prisoner's control have made it impossible to file a petition on

19  time" and "the extraordinary circumstances were the cause of his untimeliness." Spitsyn v. Moore,

20  345 F.3d 796, 799 (9th Cir.2003). In the instant case, Petitioner argues that he should be granted

21  equitable tolling because he was subjected to extraordinary circumstances beyond his control which

22  prevented him from timely complying with the limitations period. First, Petitioner contends he was

23  denied any and all access to the law library from December, 1997, to August, 1999. See p. 8,

24  Petitioner's Reply Brief dated May 16, 2005 (hereinafter "Reply"); see p. 3-4, 9, Petitioner's

25  Objections to Magistrate Judge's Findings and Recommendation dated May 13, 2003 (hereinafter

26  "Objections"). Second, Petitioner alleges he suffered from a medical condition which prevented him

27  from performing any legal work between August, 1999, and February, 2001. See p. 9-11, Reply; see

28  p.2, Petitioner's Memorandum in Support of his Opposition to Respondent's Motion to Dismiss

1    dated April 14, 2003 (hereinafter "Opposition"); see p. 12, Objections. Third, Petitioner alleges his

2    legal materials were lost or destroyed by prison staff. See p. 2, Opposition; see p. 11, Objections.

3           *1. Access to Law Library and Legal Materials*

4           Petitioner states he was placed in administrative segregation in Salinas Valley State Prison on

5    December 20, 1997, and was retained there continuously until he was transferred to High Desert

6    State Prison on March 27, 1999. See p. 2-3, Objections; see Exhibit C, Respondent's Brief.

7    Petitioner claims that during this entire period of time, he was denied any and all access to the law

8    library, law books, cases, and any legal means by which to conduct his legal affairs. Id. In addition,

9    Petitioner contends he was denied this access when he was transferred to High Desert State Prison on

10   March 27, 1999, until August 12, 1999, when he was transferred to Calipatria State Prison.

11   Respondent argues Petitioner was in fact granted access to the law library and legal materials. In

12   support of his argument, Respondent has produced three exhibits which purport to demonstrate

13   Petitioner had access to the law library and legal materials.

14          In Exhibit A, Respondent submits the Departmental Operations Manual Supplement

15   (hereinafter "DOM") which details the policy for law library access at Salinas Valley State Prison.

16   Respondent contends that Petitioner was afforded access to the law library according to the

17   provisions set forth in the DOM notwithstanding the fact that Petitioner was being housed in

18   administrative segregation.

19          The Court finds this evidence to be of little evidentiary value. While the DOM may set forth

20   the standard practice at the prison, it sheds no light on Petitioner's actual use of the law library.

21   Petitioner notes the DOM is dated "REV 01/02," meaning the DOM provided by Respondent was

22   revised in 2002 and was not the policy in force at the relevant time period. The 2002 DOM shows

23   that prisoners had access to such things as a separate law library for inmates in administrative

24   segregation as well as a CD-ROM program which could supply printed copies of requested legal

25   materials; however, Petitioner argues that at the time of his housing in administrative segregation,

26   there existed no CD-ROM program or separate law library for use by inmates.  In his surreply,

27   Respondent admits Petitioner is correct and these things did not exist at the time; however,

28   Respondent submits that administrative segregation inmates could use the "A" yard law library in

1997. In support of this, Respondent has provided a supplement to the DOM which shows that the prison policy was to allow access to the law library to inmates housed in administrative segregation during the relevant time period. See Exhibit A, Respondent's Surreply (hereinafter "Surreply"). Nevertheless, while this may have been the policy in force during the relevant time period, it provides no information as to whether Petitioner personally was denied access. Therefore, the evidence by itself provides little support for Respondent's contentions.

In Exhibit B, Respondent provides a copy of the "Requested Offender History" for Petitioner. In his brief, Respondent contends the exhibit shows Petitioner accessed the law library on eleven occasions.  However, as pointed out by Petitioner, the exhibit merely reflects Petitioner's arrival at Salinas Valley State Prison, several bed and cell transfers, a departure out of prison to go to court in Tulare County, a return to Wasco State Prison Reception Center from being out to court, a transfer back to Salinas Valley State Prison, and a transfer out to High Desert State Prison.  In his surreply, Respondent concedes the document is of no relevance to the issue of whether Petitioner had access to the law library or legal materials.

In Exhibit C, Respondent provides twelve paging system requests for legal materials which purport to demonstrate Petitioner had access to the law library from January 2, 1998, to May 12, 1998.  This evidence is relevant, for if the documents in fact show Petitioner accessed the law library during that period of time, Petitioner's claim that he was denied any and all access from December 20, 1997, to April, 1999, which he has maintained in every brief to the Court, would be untrue.

In each "Legal Materials Request," there is no inmate signature or staff signature present. Petitioner argues that this shows prison staff never fulfilled his requests and he never received the legal materials, despite having made several requests.  The Court notes, however, that many of the requests evidence some writings and remarks that show staff may have attempted to comply, were in the process of complying, or did comply with Petitioner's requests. Of greater significance is the request of February 6, 1998, which contains the following remark: "Done 2/7/98 except for pen filler CP." From this notation, it could be concluded that a staff member with initials "C.P." complied with Petitioner's request in supplying him with the following cases: In re Smith, 112 Cal.App.3d (1980); Hendricks v. Vasquez, 974 F.2d 1099-1109 (1992); and U.S. v. Grey, 878 F.2d 702, 711

1  (1989).

2      In his surreply, Respondent argues that each of Petitioner's requests were in fact fulfilled. In

3  support of this contention, he submits the sworn declaration of John H. Burk, the Senior Librarian at

4  Salinas Valley State Prison for the past seven years. See Exhibit B, Surreply. According to Burk, his

5  responsibilities included reviewing legal materials requests from inmates in administrative

6  segregation. Id. He states that the details missing from Petitioner's own requests - staff signatures

7  and inmate signatures - are not present in at least half of such requests, because prison staff do not

8  fill out this portion of the sheet at least half of the time. Id. He states that it is the usual practice of

9  staff to indicate the request has been completed by making marks next to the numbered requests on

10  the sheets.  And in some cases, the request will be fulfilled, but there may not be any marks on the

11  paper at all. Id. As stated above, Petitioner's own requests show many marks, most of them next to

12  each numbered request. In light of Burk's statement, the February 6, 1998, request was by all

13  indications fulfilled as evidenced by the remark: "Done 2/7/98 except for pen filler CP." In addition,

14  it appears that Petitioner's other requests were fulfilled as evidenced by the notations and marks next

15  to his numbered requests.

16      In addition, Burk states that during his seven year tenure, he has never seen a legal materials

17  request for mandated legal materials ignored or not fulfilled. Id. Furthermore, he states that if a legal

18  materials request is found in an inmate's file, as it was in this case, then the request was fulfilled. Id.

19  The Court also notes that during the relevant time period, Petitioner filed two state petitions in state

20  court, one on March 23, 1998, and the other on April 15, 1998.  Although Petitioner maintains the

21  first was prepared prior to his access being denied, they are both thoroughly briefed with a

22  supporting memorandum of law which contains several of the cases requested by Petitioner in his

23  legal materials requests.  From all of the evidence, the Court does not find Petitioner's claim, that he

24  was denied *any and all* access to the law library, to be credible. Accordingly, Petitioner should not

25  be entitled to equitable tolling from December 20, 1997, to August 12, 1999, the time he was

26  allegedly denied access to the law library and legal materials.

27      *2. Petitioner's Medical Condition*

28      On January 30, 2001, Petitioner was examined and diagnosed with diabetic ketoacidosis, a

condition which both parties contend is short-lived - lasting approximately 2-3 weeks - which if left untreated could cause a person to die within a few days.  Petitioner was immediately transported to an outside hospital where he was treated with fluid and insulin.  Both parties acknowledge that the condition, while it lasted, was life-threatening.  Petitioner, however, contends that his diabetic condition extended back to August 12, 1999, when he arrived at Calipatria State Prison, and that during said time, the condition prevented him from doing any serious legal work. <u>See</u> p. 7, Exhibit B, Reply.  Petitioner states he suffered from a condition known as hyperglycemia, which is commonly known as high blood sugar. <u>See</u> p. 10, Reply.  Petitioner alleges the condition went untreated for over a year despite his complaints of classic diabetic symptoms such as dizziness, blurred vision, headaches, weight loss, and blackouts. <u>See</u> p. 4, Opposition. Petitioner contends these symptoms caused him to be unable to pursue his legal remedies.

Respondent argues that Petitioner's complaints are overstated. In support of his argument, Respondent submits the sworn declaration of Dr. Laureano Santiago, a physician employed at Calipatria State Prison who allegedly treated Petitioner on January 30, 2001. <u>See</u> Exhibit D, Respondent's Brief. In his declaration, Dr. Santiago states he reviewed Petitioner's medical records for the period of August of 1999 to 2002. <u>Id</u>. According to the medical reports, Dr. Santiago states that Petitioner had complained of weight loss, frequent urination, blurred vision, dizziness, and dehydration in the few weeks prior to the January 30, 2001, incident of ketoacidosis. <u>Id</u>. Dr. Santiago states that Petitioner's medical records reflected he had not complained of diabetic symptoms prior to that time. <u>Id</u>. Dr. Santiago states he had a conversation with Petitioner on January 30, 2001, wherein Petitioner informed him he had been experiencing the above symptoms for the first time approximately 2-3 weeks prior to the consultation. <u>Id</u>. As a result of the consultation, Dr. Santiago diagnosed Petitioner with diabetic ketoacidosis and referred him to an outside hospital. <u>Id</u>. Dr. Santiago states Petitioner has been controlling his diabetic condition through regular insulin treatment since recovery in February of 2001. <u>Id</u>.

Petitioner states he was not treated by Dr. Santiago and did not have a "wordy conversation" with him. <u>See</u> p. 9, Reply. However, Petitioner acknowledges that Dr. Santiago was present in the prison emergency room when Petitioner was examined and referred to an outside hospital. <u>Id</u>.

1  Petitioner contests Dr. Santiago's summary of his medical records in which Dr. Santiago states that

2  Petitioner had not reported diabetic symptoms prior to the two or three weeks leading up to the

3  January 30, 2001, incident. Petitioner argues he was suffering from hyperglycemia for the year prior,

4  but he was mis-diagnosed by hospital doctors. Unfortunately, the Court is not in possession of

5  Petitioner's medical file. Therefore, the Court cannot determine whether Dr. Santiago's review is

6  accurate. Accordingly, Petitioner should be entitled to tolling from the time Petitioner alleges he

7  began suffering from hyperglycemia, to wit, August 12, 1999.

8       Petitioner claims Dr. Santiago's statement that Petitioner has been controlling his diabetic

9  condition is "completely false" and demonstrates Dr. Santiago did not review the medical file since

10  Petitioner has been an "uncontrolled diabetic" on a "sliding scale insulin regime" for the past four

11  and a half years. Id. The Court finds this argument unpersuasive. The fact that Petitioner is defined

12  as an uncontrolled diabetic does not mean that his condition is not being controlled. Petitioner is

13  arguing over semantics. Clearly, the erratic nature of Petitioner's sugar level readings require him to

14  be on a sliding scale insulin regime. Petitioner's condition is being controlled in the only manner

15  possible. While Petitioner's treatment may not be having the outcome of a constant blood sugar level

16  reading, Petitioner's condition is still being controlled in a medical sense.  Therefore, Petitioner's

17  contention that Dr. Santiago's review should be disregarded on this basis is without merit.

18       In addition, Petitioner complains that he was without appropriate eyewear from 1997 onward

19  which prevented him from timely complying with the limitations period. The Court finds this

20  argument unpersuasive. Obviously, eyesight is necessary to pursue one's legal remedies and

21  deficient eyesight could be cause enough to excuse a failure to timely pursue those remedies.

22  Nevertheless, Petitioner's claim is belied by the sheer volume of legal documents he generated from

23  1997 on. In addition, Petitioner was able to find a replacement. While not perfect, the eyeglasses

24  apparently sufficed as shown by the volume of paperwork produced. The Court finds Petitioner's

25  claim of not being able to see properly to be overstated and not deserving of equitable tolling.

26       In sum, it is apparent Petitioner should be entitled to equitable tolling for his diabetic

27  condition from August 12, 1999, until March 1, 2001, the date on which both parties agree Petitioner

28  had recovered. The Court notes that Petitioner in his reply argues that his blood sugar levels were

increasingly high and uncontrolled for several months after February, 2001. The Court assumes

Petitioner is attempting to argue that he should be entitled to equitable tolling for these several

months following the incident as his symptoms of hyperglycemia were much the same as that prior

to the incident and prevented him from pursuing his legal affairs.  However, Petitioner undercuts this

argument in his opposition and objections where he concedes that, physically, he was able to pursue

his post-conviction remedies and in fact did so once the condition was controlled as evidenced by his

March 2, 2001, filing of a fully-briefed state habeas petition. <u>See</u> p. 10, Reply; <u>see</u> p. 2, Opposition

("The evidence shows that once these impediments were removed and or medically corrected,

petitioner was able to pursue his post-conviction remedies"); <u>see</u> p. 8, Objections ("after the

impediments spoken to by petitioner were removed in late 2000, early 2001"); <u>see</u> Exhibit M,

Motion to Dismiss.  Thus, the Court finds Petitioner is entitled to equitable tolling for the period of

August 12, 1999, to March 1, 2001, as a result of his diabetic condition.

### *3. Loss of Property*

Lastly, Petitioner contends prison officials lost or destroyed his property including his legal

documents and work product in December, 1997.[1] Petitioner claims this loss precluded him from

pursuing his state remedies until 2001 when he gave up attempting to recover his lost property and

began researching his case anew.

Respondent contends the claim is without merit because Petitioner, despite having lost his

property, managed to file two well-briefed state petitions on March 23, 1998, and April 15, 1998.

Petitioner states that the March 23, 1998, petition "was prepared in rough draft form prior to

petitioner's placement in Ad/Seg on 12/20/97, and was sent to petitioner's wife for typing and

mailing soon after petitioner was placed in Ad/Seg." <u>See</u> p. 8, Objections. The fact that Petitioner

possessed this petition for filing on March 23, 1998, tends to show he was not deprived of all his

---

[1]Petitioner claimed a loss of property on three different dates. In his opposition, Petitioner stated two dates for the loss of his property: August 12-13, 1999, and September, 1998. Magistrate Judge Best relied on August 12-13, 1999, as the proper date. However, in his objections Petitioner stated this was an error and the proper date was the September, 1998, date. The Findings and Recommendation was adopted using the 1999 date. Respondent also correctly notes that Petitioner provided still another date for loss of property: December, 1997. In several state records, Petitioner indicates that prison officials lost legal papers during this month. Since this was the first time Petitioner complained of lost legal property, the Court will utilize this date as the appropriate date.

1   legal property. Of greater significance is the April 15, 1998, state habeas petition. Petitioner states

2   that this petition was "hand drafted in rough form while at the county jail on the evidentiary [sic]

3   hearing in preparation of a denial of the petition being heard, with blanks to be filled in if in fact

4   denied." Id. Petitioner states that the two (2) case citations were obtained from a cell-mate. The

5   Court has reviewed the petition filed on April 15, 1998. While Petitioner indeed only included two

6   case citations, he also included ten (10) exhibits which included state court records, trial transcripts,

7   the probation officer's report, a prior petition, and a state court opinion. This fact directly contradicts

8   his contention that "all of his legal materials had been taken when placed in administrative

9   segregation and thereafter lost or destroyed by prison officials." See p. 2, Opposition. Based on these

10   facts, the Court concludes that Petitioner was not deprived of all of his legal materials following

11   placement in administrative segregation on December 20, 1997, as he claims, and Petitioner should

12   not be entitled to equitable tolling.

13        In addition, Petitioner should not be entitled to equitable tolling following his arrival at

14   Calipatria State Prison on August 12, 1999, for his alleged lost legal materials.  According to

15   Petitioner, his legal materials had been lost for over a year and a half (since December 20, 1997).

16   According to Petitioner, he had been attempting to recover his property since that time. In September

17   of 1998, he was informed that his legal materials were lost or destroyed and could not be located.  It

18   was at this point that Petitioner should have begun work on redrafting his petition. However,

19   Petitioner alleges he was unable to do so because he was denied access to the law library until

20   August 12, 1999, when he was transferred to Calipatria State Prison. At that point, Petitioner states

21   he recommenced working on his legal remedies. However, this Court has found Petitioner's claim

22   that he was denied all access to the law library since December 20, 1997, to be disingenuous. In any

23   case, had Petitioner delayed any further at this point, it would only be due to lack of diligence on his

24   part. Therefore, the limitations period should not be tolled from this point onward for his lost legal

25   materials.[2]

26   **B. Calculation of the Limitations Period**

27

28       [2]As discussed above, however, Petitioner should be entitled to equitable tolling for his diabetic condition from this point forward until the condition was resolved in February, 2001.

1    In general, the limitations period begins running on the date that the petitioner's direct review

2    became final.  In this case, the California Court of Appeal affirmed Petitioner's conviction on

3    October 1, 1997, and Petitioner did not file a petition for review.  According to the Rules of Court, a

4    decision becomes final thirty (30) days after filing, and an appeal must be taken to the California

5    Supreme Court within ten (10) days of finality.  Cal.R.Ct. 24(a), 28(b).  Thus, direct review

6    concluded on November 10, 1997.  Petitioner had one year until November 10, 1998, in which to file

7    his federal petition for writ of habeas corpus.  However, Petitioner did not file his federal petition

8    until September 3, 2002, almost four years beyond the due date.  Absent any applicable tolling, the

9    petition is barred by the statute of limitations.

10    Title 28 U.S.C. § 2244(d)(2) states that the "time during which a properly filed application

11    for State post-conviction or other collateral review with respect to the pertinent judgment or claim is

12    pending shall not be counted toward" the one year limitation period.  28 U.S.C. § 2244(d)(2).  In

13    Carey v. Saffold, the Supreme Court held the statute of limitations is tolled where a petitioner is

14    properly pursuing post-conviction relief, and the period is tolled during the intervals between one

15    state court's disposition of a habeas petition and the filing of a habeas petition at the next level of the

16    state court system. 122 S.Ct. 2134, 2135-36 (2002); see also Nino v. Galaza, 183 F.3d 1003, 1006

17    (9th Cir. 1999), cert. denied, 120 S.Ct. 1846 (2000); Gaston v. Palmer, 387 F.3d 1004 (9th Cir.2004)

18    (In California, a petitioner is entitled to gap tolling between the decision of the state court and the

19    filing of another petition if the petitioner is seeking further review of the same claims.)

20    As stated above, the statute of limitations began to run on November 10, 1997. The first three

21    collateral challenges were filed and ruled on in state court prior to the conclusion of direct review.

22    Because the statute of limitations had not yet commenced, the challenges could not operate to toll the

23    limitations period. The limitations period ran until Petitioner filed his first collateral challenge in

24    Tulare County Superior Court on February 26, 1998.[3]  At that point, 108 days of the limitations

25    period had run. Pursuant to § 2244(d)(2), Petitioner is entitled to tolling until it was denied on March

26

27    ⎯⎯⎯⎯⎯⎯⎯⎯⎯
        [3]The petition is considered filed when Petitioner handed it to prison officials for mailing. Houston v. Lack, 487 U.S.

28    266, 270 (1988). Although the petition shows it was filed in the Superior Court on March 23, 1998, Petitioner signed the
        proof of service on February 26, 1998.

27, 1998.  Petitioner then filed a habeas petition in the 5th DCA on April 15, 1998, which was denied on April 21, 1998. Pursuant to § 2244(d)(2), Petitioner is entitled to tolling for the time this petition was pending as well. Petitioner is also entitled to gap tolling for the interval between them, because the second petition sought further review of the claims he raised in the first petition. Gaston, 387 F.3d at 1016. The statute of limitations then resumed running on April 21, 1998, until it expired on December 25, 1998.  It is a moot point that Petitioner deserves equitable tolling for his diabetic condition, because he did not begin suffering from it until August 12, 1999, over seven months after the limitations period expired.

Even if the Court were to equitably toll the limitations period for the time Petitioner alleges he was denied access to the law library and staff had lost all of his legal materials, to wit, December 20, 1997, to August 12, 1999, the instant petition would still be untimely.  By August 12, 1999, 40 days of the limitations period would have run. On August 12, 1999, Petitioner alleges he began suffering from his diabetic condition. As already discussed, Petitioner is entitled to equitable tolling from August 12, 1999, until March 1, 2001, the date all impediments were resolved. for the lost materials or denial of access to the law library. The Court notes that Petitioner is not entitled to statutory gap tolling from April 21, 1998, to March 2, 2001, because review was not pending in the state courts during this time. Gaston, 387 F.3d at 1016.  No valid grounds for equitable tolling were made by Petitioner for the remaining time period from March 1, 2001, to September 3, 2002.  Absent any statutory tolling, the limitations period would have expired on January 20, 2002.

As previously discussed, Petitioner is entitled to statutory tolling for the time which "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending." 28 U.S.C. § 2244(d)(2). Petitioner filed a petition for writ of habeas corpus in the Tulare County Superior Court on March 2, 2001. See Exhibit M, Motion. The petition was denied on October 30, 2001. See Exhibit N, Motion. While the petition did challenge the pertinent judgment or claim, it was not timely filed.  The Superior Court declined to review the merits of the petition stating that to the extent the claims were not already raised and rejected in prior proceedings, they "could and should have been made on appeal." Id. at 2. The Superior Court found Petitioner had failed to show "adequate justification why these additional

1    claims were not made earlier." Id. at 2. The Superior Court cited three California cases which hold

2    that California courts will not consider claims which were not timely raised on appeal: In re Clark, 5

3    Cal.4th 750 (1993); In re Dixon, 41 Cal.2d 756 (1953); and In re Black, 66 Cal.2d 881 (1967). In a

4    recent case, the Supreme Court held that an untimely post-conviction state petition is not "properly

5    filed" within the meaning of § 2244(d)(2) and does not operate to toll the federal limitations period.

6    Pace v. DiGuglielmo, 2005 WL 957194, *4 (April 27, 2005), citing Carey v. Saffold, 536 U.S. 214

7    (2002) ("When a postconviction petition is untimely under state law, 'that [is] the end of the matter'

8    for purposes of § 2244(d)(2).") Therefore, the March 2, 2001, petition, considered untimely under

9    state law, has no tolling consequences for purposes of § 2244(d)(2).

10         On August 28, 2001, Petitioner filed a petition in the 5th DCA. See Exhibit O, Motion. It was

11   construed by the appellate court as a petition for writ of mandate and denied on August 30, 2001. See

12   Exhibit P, Motion. In said petition, Petitioner sought the disqualification of Tulare County Superior

13   Court Judge Gerald Sevier with sanctions to be imposed against him for willful misconduct and

14   deliberate indifference to Petitioner's federal and state constitutional rights. As stated by Petitioner in

15   his petition, he was "NOT challenging the conviction in this court via this petition." See Exhibit O at

16   2. Rather he sought to challenge "only . . . the actions of a Superior Court Judge . . . ." Id. Because

17   the petition was not a post-conviction collateral challenge "with respect to the pertinent judgment or

18   claim," it had no tolling consequences for purposes of § 2244(d)(2). Therefore, the limitations period

19   continued to run during the time the petition was pending.

20         Pursuant to the mailbox rule, the next state petition was filed on November 28, 2001, in the

21   5th DCA. See Exhibit Q, Motion. The petition was summarily denied on December 13, 2001. See

22   Exhibit R, Motion. Petitioner would be entitled to statutory tolling for the 15 days it was pending.

23   The limitations period would then resume running on December 13, 2001, with 53 days remaining.

24         On January 8, 2002, Petitioner filed a habeas petition in the 5th DCA. See Exhibit S, Motion.

25   The petition was denied on May 20, 2002, with citation to In re Harris, 5 Cal.4th 813, 828 (1993).

26   See Exhibit T, Motion.  The pinpoint citation by the 5th DCA refers to the requirement under

27   California law that a petitioner exercise due diligence in timely pursuing his remedies. Because the

28   petition was denied as untimely filed, it does not operate to toll the limitations period.  Pace, 2005

1    WL 957194, *4.

2          On January 17, 2002, Petitioner filed a habeas petition in the California Supreme Court. See

3    Exhibit U, Motion. The petition was denied on July 24, 2002, with citation to In re Robbins, 18

4    Cal.4th 770, 780 (1998). See Exhibit V, Motion. This pinpoint citation by the California Supreme

5    Court also refers to California's requirement that petitioners pursue their remedies in a timely

6    fashion. Because this petition was also denied as untimely, it too had no tolling consequences.

7    Therefore, the limitations period would have expired on February 4, 2002.

8          Accordingly, the Court finds Petitioner is entitled to equitable and statutory tolling as

9    determined above. Nevertheless, the instant federal petition was filed after the limitations period

10   expired and is therefore untimely pursuant to 28 U.S.C. § 2244(d)(2). It must be dismissed with

11   prejudice.

12                                          **ORDER**

13         Accordingly, IT IS HEREBY ORDERED:

14         1. The petition for writ of habeas corpus is DISMISSED with prejudice; and

15         2. The Clerk of Court is DIRECTED to enter judgment for Respondent.

16   IT IS SO ORDERED.

17   **Dated:    June 1, 2005**              _____/s/ Lawrence J. O'Neill_____
     b9ed48                                  UNITED STATES MAGISTRATE JUDGE
18

19

20

21

22

23

24

25

26

27

28